IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY RUDD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MINGO TRIBAL PRESERVATION ) <br> TRUST, a North Carolina private ) <br> trust, and JESSE W. HORTON, as ) <br> Trustee of the Mingo Tribal ) <br> Preservation Trust, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. CV-05-467-E-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Docket No. 21). The Court held oral argument on the motion on February 13, 2007 and now issues the following decision.

## ANALYSIS

### I. Summary Judgment Standard

The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). One

**Memorandum Decision and Order - 1**

of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). The trial judge must determine whether the evidence presented is such that a jury applying the proper evidentiary standard could reasonably find for either the plaintiff or the defendant. *Id.*

The moving party bears the initial burden of demonstrating the absence of a

**Memorandum Decision and Order - 2**

genuine issue of material fact. *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

Defendants seek summary judgment on all three of Rudd's claims, which include tortious interference with contract, fraud, and interference with prospective

**Memorandum Decision and Order - 3**

economic advantage. Defendants contend that all three claims are precluded by judicial estoppel, collateral estoppel and/or Idaho law. Defendants further contend that Rudd fails to establish the prima facie elements of each claim. The Court will address each of these arguments in turn.

## II. Judicial Estoppel

Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, "is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Ca. Co., 270 F.3d 778, 782 (9th Cir. 2001)*. The Ninth Circuit has adopted three factors to consider when determining whether to apply the doctrine of judicial estoppel. These factors include: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton, 270 F.3d at 782-83*. (Internal quotations and citations omitted).

**Memorandum Decision and Order - 4**

Rudd settled an earlier case against his former employer, American Realty West ("ARW") (case hereafter referred to as ("*Rudd I*")) for $80,000.00. Notably, except for a motion to dismiss based on lack of jurisdiction, the parties settled *Rudd I* before the Court addressed any substantive motions or issues in that case. Thus, factor two above was not fulfilled – Rudd did not succeed in persuading a court to accept his earlier position. "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to judicial integrity." *Id*. at 782-83 (internal quotations and citations omitted). The Court finds this dispositive of the judicial estoppel question in this case. Accordingly, the Court will not preclude Rudd's claims based on judicial estoppel.

## III.  Collateral Estoppel

Federal law controls the collateral estoppel analysis where a federal court has decided the earlier case. *See McQuillion v. Scharzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). "Collateral estoppel is appropriate when '(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.'"

**Memorandum Decision and Order - 5**

*United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 873 (9th Cir. 2001) (quoting *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000)). The party asserting collateral estoppel bears the burden of showing with clarity and certainty what the prior judgment determined. *See Offshore Sportswear, Inc. v. Vuarnet Intern., B.V.*, 114 F.3d 848, 850 (9th Cir. 1997).

Element number two is not met in this case. The Court disposed of *Rudd I* based on the parties' stipulation. "A stipulation may meet the 'fully litigated' requirement where 'it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action.'" *See Santa Barbara*, 264 F.3d at 873 (citing *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978)). However, all stipulations do not necessarily fulfill the fully litigated requirement. In fact, in *Santa Barbara*, the Ninth Circuit noted that the case was "entirely different from *Green*, which involved a federal suit that sought to relitigate a state court action that had been settled by the same parties." *Id.* In *Santa Barbara*, the United States Government sought land owned by the defendants pursuant to a statute making proceeds traceable to a drug transaction subject to forfeiture. The Ninth Circuit stated that collateral estoppel was inappropriate for two reasons. First, there was no evidence that the parties intended the stipulation in the first case to be a final adjudication of

**Memorandum Decision and Order - 6**

the merits of the innocent spouse issue. The court specifically noted that the fact that the guilty spouse agreed to pay a substantial percentage of the money sought by the government suggested that a finding of no joint liability was hardly a significant concession. *Id.* Second, the earlier case only covered one year, and the second case covered a period of six years. *Id.* at 873-74.

In this case, there is no evidence that the parties in *Rudd I* intended the stipulation to be a final adjudication of the merits with respect to whether Defendants interfered with Rudd's employment contract with ARW. Likewise, there is no indication that the parties intended the stipulation to be a final adjudication of whether Defendants interfered with the contract between ARW and EHCO Ranch ("EHCO"). Thus, the settlement in *Rudd I* does not meet the fully litigated requirement. Accordingly, the Court will not apply collateral estoppel in this case.

**IV.   Idaho Code § 54-2054 Does Not Prohibit Rudd's Claims**

Idaho Code § 54-2054(9) states that "[a]ll fees must be paid through broker. No sales associate shall accept any commission, compensation or fee for the performance of any acts requiring a real estate license from any person except the real estate broker with whom the sales associate is licensed." I.C. § 54-2054(9). However, Idaho Code § 54-2054(1) states that "no person engaged in the business

**Memorandum Decision and Order - 7**

or acting in the capacity of real estate broker or salesperson in Idaho shall bring or maintain any action in the courts for the collection of a fee, commission or other compensation for the performance of any acts requiring a real estate license as provided in section 54-2002, Idaho Code, without alleging and proving that such person was an actively licensed broker or salesperson in Idaho at the time the alleged cause of action arose." I.C. § 54-2054(1).

This statute is not a model of clarity. Reading subsections (1) and (9) together, however, the Court interprets subsection (1) as dealing with law suits, while subsection (9) deals with collection of fees. Moreover, subsection (1) suggests that a salesperson such as Rudd can maintain an action in court for collection of a fee, commission or other compensation if he alleges and proves that he was an actively licensed salesperson in Idaho. There is no dispute that Rudd was a licensed salesperson in Idaho at the time the alleged cause of action arose. Accordingly, the Court finds that Rudd's claims are not statutorily prohibited.

## V.   Tortious Interference with Contract

"A prima facie case of tortious interference with contract exists where a plaintiff establishes: (a) the existence of a contract, (b) knowledge of the contract on part of the defendant, (c) intentional interference causing breach of the contract and (d) injury to the plaintiff resulting from the breach." *Thirsty's L.L.C. v.*

**Memorandum Decision and Order - 8**

*Tolerico*, 143 P.3d 435, 436 (Idaho 2006) (citing *Barlow v. International Harvester Co.*, 522 P.2d 1102, 1113 (Idaho 1972)). Rudd claims tortious interference with the contract between ARW and EHCO and with his employment contract with ARW.

    A.    **ARW/EHCO Contract**

Defendants contend that Rudd has failed to establish the existence of a contract or that Defendants intentional interference resulted in a breach of the contract. With respect to the existence of a contract, Defendants argue that Rudd has no claim for tortious interference with the ARW/EHCO contract because Rudd was not a party to that contract. Idaho case law does not specifically state whether a plaintiff must be a party to the contract in order to maintain a claim for tortious interference with a contract. For guidance on this question, both parties reference Restatement 2d Torts § 766, which addresses intentional interference with performance of contract by a third person. The Idaho Supreme Court has relied on § 766 for guidance on how to define knowledge for purposes of a claim of tortious interference with a prospective economic advantage. *See Highland Enterprises, Inc. v. Barker*, 986 P.2d 996, 1005 (Idaho 1999). It is therefore reasonable to assume that the Idaho Supreme Court would rely on § 766 in determining whether a plaintiff must be a party to the contract in order to maintain a claim for tortious

**Memorandum Decision and Order - 9**

interference with contract.

In this regard, § 766, at comment p, states in relevant part as follows:

> *p. The person protected*. The person protected by the rule stated in this Section is the specified person with whom the third person had a contract that the actor caused him not to perform. To subject the actor to liability under this rule, his conduct must be intended to affect the contract of a specific person. It is not enough that one has been prevented from obtaining performance of a contract as a result of the actor's conduct. (Cf. § 766A). Thus, if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, unless A intends to affect them. Even then they may not be able to recover unless A acted for the purpose of interfering with their contracts. (See § 767, Comment h).

Rest. 2d Torts § 766, comment p.

Thus, in the context of this case, Rudd is within the scope of protection only if Defendants intended to affect him and acted for the purpose of interfering with his contract with ARW. Determination of Defendants' intent and purpose are better left to the jury. Accordingly, the Court will deny Defendants' motion for summary judgment on Rudd's tortious interference with contract claim. However comment p will govern the Courts instructions to the jury. If any claim relating to the ARW/EHCO contract is submitted to the jury, it will be instructed that Rudd may only recover if the Defendants acted with the intent to affect him and to

**Memorandum Decision and Order - 10**

interfere with his contract.

Defendants also contend that Rudd cannot show interference causing breach of the contract. Citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 860 (Idaho 1991), Defendants contend that Rudd cannot meet this element of his tortious interference with contract claim because Rudd must produce evidence that Defendants interfered in some wrongful manner. Defendants have confused the elements of tortious interference with contract with the elements of intentional interference with prospective economic advantage. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 860 (Idaho 1991). There is no requirement that Rudd produce evidence that Defendants interfered in some wrongful manner in a tortious interference with contract claim. *Id.* The Court will address the issue of wrongfulness as it relates to the intentional interference with prospective economic advantage claim below. However, the Court will deny the motion for summary judgment on Rudd's tortious interference with contract claim as it relates to the ARW/EHCO contract.

### B. Rudd's Employment Contract with ARW

In a one-paragraph argument, Defendants contend that Rudd cannot prove tortious interference with his employment contract because Rudd was not fired, demoted, disciplined or reprimanded and because the claim was resolved in *Rudd I*.

**Memorandum Decision and Order - 11**

However, Rudd does not assert that ARW breached the employment contract by firing, demoting, disciplining or reprimanding him. He alleges that the contract was breached when ARW failed to pay him his commission.

Moreover, although *Rudd I* settled ARW's liability as to its employment contract with Rudd, it did not settle whether Defendants are liable to Rudd for tortious interference with that contract. Accordingly, the Court will also deny the summary judgment motion on tortious interference with contract as it relates to Rudd's employment contract with ARW.

## VI. Fraud Claim

The elements of actionable fraud or misrepresentation are as follows: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Aspiazu v. Mortimer*, 82 P.3d 80, 832 (Idaho 2003).

Essentially, Rudd asserts that Defendants committed fraud by assuring him that he would be paid his commission, knowing that he would not receive a commission. Rudd asserts that he relied on that assurance by not pursing other

**Memorandum Decision and Order - 12**

means of protecting his right to a commission.

It is standard practice, and true in this case, that the seller, not the buyer, of real estate is obligated to pay the real estate agent's commission. The uncontroverted evidence in this case shows that EHCO, not Defendants, would be responsible for paying the real estate agent's commission. The original purchase and sale agreement so stated (Horton Aff., Ex. A, p. 9, Docket No. 22), and the real estate broker, John McKeller, so testified (McKeller Aff., ¶ 16, Docket No. 21). Knowing this, Rudd had no right to rely on any statement by Defendants that Rudd would receive a commission. Thus, Rudd has failed to raise a genuine issue of material fact as to the eighth element of his fraud claim. The Court will therefore grant summary judgment in favor of Defendants on Rudd's fraud claim.

## VII.   Interference with Perspective Economic Advantage Claim

The elements of a claim for interference with perspective economic advantage are as follows: "(1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself (i.e. that the defendant interfered for an improper purpose or improper means) and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Highland*

**Memorandum Decision and Order - 13**

*Enterprises, Inc. v. Barker*, 986 P.2d 996, 1004 (Idaho 1999).

Defendants suggest that they did not interfere for an improper purpose or improper means because they did what they had every right to do, i.e., they forfeited earnest money to EHCO as contemplated by the option agreements when they failed to close a deal, and ultimately purchased the property from Wells Fargo. Rudd counters that the forfeitures were not forfeitures at all, but rather payments that were credited toward future transactions. Rudd contends that disguising the credits as forfeitures was done for an improper purpose of cutting ARW and Rudd out of the deal.

However, Rudd's accusation are supported only by speculation. For example, many statements in Rudd's brief are wholly without reference to evidence. Additionally, Rudd makes unsupported conclusions such as the following: "it appears that the parties credited the $600,000.00 'forfeited' earlier, and another $200,000.00 that has not been accounted for, toward the option money on the November 9, 2001 contract." (Plaintiff's Memorandum Opposing Defendants' Motion for Summary Judgment, p. 11). This is simply not enough to create a genuine issue of material fact as to whether Defendants interfered for an improper purpose or improper means. Accordingly, the Court will grant summary judgment in favor of Defendants on Rudd's interference with prospective

**Memorandum Decision and Order - 14**

economic advantage claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 21) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted with respect to Rudd's fraud and interference with prospective economic advantage claims, but denied with respect to Rudd's tortious interference with contract claim.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case for a status conference for the purpose of setting the case for trial.



DATED:  **March 29, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 15**